153  525
66a 306
153    525
e197   353

ANNE O'NEILL

v.

JAMES C. SINCLAIR.

*Filed at Ottawa November 27, 1894.*

BROKER—*one transaction does not constitute one a broker.*  Negotiating a single sale of real estate does not make one a "real estate broker," within the meaning of an ordinance defining such broker to be one who "is engaged in selling or negotiating sales of real estate belonging to others," and compensation for making such single sale may be recovered though no license was taken out, as required by the ordinance.

*O'Neill* v. *Sinclair*, 54 Ill. App. 298, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

Mr. JESSE HOLDOM, for the appellant:

When a statute forbids a particular business generally, or to unlicensed persons, any contract made in such business by one not authorized, or made with a view of violating the statute, is void.    Bishop on Contracts, sec. 547, and cases in note 6.

It·is a familiar principle of law, that a thing done in contravention of an express statute can not be made the subject of a suit at law.    *Wheeler* v. *Russell*, 17 Mass. 259; *Tenney* v. *Foote*, 95 Ill. 99; *Fisher* v. *Bridges*, 3 Ellis & Bl. 642; 1 Parsons on Contracts, 456; *Armstrong* v. *Toler*, 11 Wheat. 258; Bishop on Contracts, sec. 471, and cases in note 7; 2 Benjamin on Sales, sec. 825.

The cases arising under this ordinance, decided by the Appellate Court, are:    *Hustis* v. *Pickands*, 27 Ill. App. 270; *Hamilton* v. *Harvey*, 33 id. 499; *Eckert* v. *Collot*, 46 id. 361; *Whitfield* v. *Huling*, 50 id. 179.

Mr. T. A. MORAN, for the appellee:

A person who is not engaged in exercising the business of a real estate broker in Chicago may recover compensation for services rendered in finding a purchaser for the real estate of another, under a special contract, without being licensed as a real estate broker. *Chadwick* v. *Collins*, 26 Pa. St. 138; *Sheples* v. *Scott*, 85 id. 329; *Johnson* v. *Hulings*, 103 id. 498; *East St. Louis* v. *Box*, 43 Ill. App. 276.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was a suit in assumpsit, brought by James C. Sinclair, against Anne O'Neill, to recover the sum of $5000 for the plaintiff's services in finding a purchaser for certain real property of the defendant. The declaration consisted of a special count and the common counts, the special count alleging, in substance, that the defendant, being the owner of certain real estate in the city of Chicago, employed the plaintiff to find a purchaser therefor within five days, at the price of $205,000, and in consideration that the plaintiff would find such purchaser within that time for that price, the defendant promised to pay him the sum of $5000; that the plaintiff procured a purchaser according to the terms of the contract, whereby the defendant became liable to pay him $5000.

The defendant pleaded non assumpsit, and a special plea, setting up the following ordinance of the city of Chicago:

"*Be it ordained by the city council of the city of Chicago:*

"Sec. 1. It shall not be lawful for any person to exercise within this city the business of a money changer or banker, broker or commission merchant, including that of merchandise, produce or grain broker, real estate broker and insurance broker, without a license therefor.

"Sec. 2. A merchandise, produce or grain broker is one who, for commission or other compensation, is engaged in selling or negotiating the sale of goods, wares, merchandise, produce or grain belonging to others.

"Sec. 3. A real estate broker is one who, for commission or other compensation, is engaged in the selling of or negotiating sales of real estate belonging to others, or obtains or places loans for others on real estate.

"Sec. 4. An insurance broker is one who is engaged in procuring or places insurance on buildings, vessels and other property for others.

"Sec. 5. There shall be collected annually for every license granted for any banker the sum of $100, and there shall be collected annually for every license granted for any merchandise, produce or grain broker, or commission merchant or money changer or broker, the sum of $25, and there shall be collected annually for every license granted for any real estate broker the sum of $25, and there shall be collected annually for every license granted any insurance broker the sum of $25.

"Sec. 6. That any person violating any provision of this ordinance shall be subject to a penalty of not less than $25 nor more than $100, and to the same penalty for every subsequent violation thereof."

The plea then alleged, that at the time of the supposed promises the plaintiff had not obtained, and did not then or theretofore have, a license, as specified in the ordinance, authorizing him to act as a real estate broker within the city of Chicago; that the sum of money sought to be recovered is for commissions alleged to have been earned by the plaintiff as a real estate broker, in the sale of real estate of the defendant, at her alleged request, within the city of Chicago.

To the last mentioned plea the plaintiff replied, that at the time of the making of the promises by the defendant, as in the declaration alleged, the plaintiff was not engaged in the selling of or negotiating sales of real estate belonging to others, for a commission or other compensation, or obtaining loans of money on real estate for others, in the city of Chicago or elsewhere. A de-

murrer by the defendant to this replication was over-ruled, and the defendant elected to abide by her demurrer.

At the trial, evidence was given tending to show that, at and during the time of the negotiations which resulted in the sale of the defendant's property, the plaintiff was engaged in the hardware business in the city of Chicago, his place of business being in the immediate vicinity of the property; that during a period of several months the plaintiff and defendant had had numerous conversations in relation to selling the property, and several propositions had been made by the defendant as to the price at which she was willing to sell it; that finally she entered into an agreement with the plaintiff that if he would sell the property for her within five days, for $205,000, she would pay him $5000; that within the five days he brought to her one A. J. Alexander, a resident of the State of. Kentucky, as a purchaser of the property at the price named, and that the defendant thereupon sold the property to Alexander for $205,000, and received from him payment of the purchase money in full.

There was also evidence tending to show that Alexander's agent in Chicago was one Charles S. Waller, and that Alexander, being desirous of purchasing the defendant's property, through his agent, Waller, employed the plaintiff to negotiate for the property with the defendant, and that during all the negotiations the plaintiff was in fact acting in the interest and employment of Alexander. The evidence also tended to show that the plaintiff in no way communicated to the defendant the fact that he was acting for and in the interest of Alexander, and that she, at the time she sold the property, was kept in complete ignorance of that fact. The evidence was clear and undisputed that at the time of the sale of the defendant's property the plaintiff had no license from the city of Chicago authorizing him to carry on the business of a real estate broker within the city.

Upon the foregoing evidence, the court, at the instance of the defendant, gave to the jury the following instructions:

1. "The court instructs the jury, on the part of the defendant, that where a person undertakes an employment for compensation in the sale of property, as an agent for another person, and is at the same time acting for the purchaser, without disclosing that fact to his employer, such agent cannot recover compensation for negotiating such sale.

2. "The court instructs the jury, that an agent who represents, in a sale of real estate, both the seller and the purchaser, without making known to the seller his relationship to the purchaser, cannot recover compensation for negotiating such sale, from the seller."

The following instructions asked by the defendant were refused:

1. "The court instructs the jury, that to enable a person to sue for and recover a commission or compensation for making a sale of real estate, or for procuring a purchaser for real estate in the city of Chicago, such person must have a license authorizing him to exercise the business of a real estate broker in said city. In this case, unless you find that the plaintiff had such license, you must find for the defendant.

2. "In this case, the plaintiff sues for a commission claimed to be due him from the defendant for procuring a purchaser for certain real estate in Chicago. The court instructs the jury, that if you find, from the evidence, that the plaintiff did not have a license authorizing him to exercise within said city the business of a real estate broker, your verdict must be for the defendant.

3. "It appearing that the plaintiff has not a license authorizing him to exercise the business of a real estate broker in this city, your verdict must be for the defendant."

153—34

The jury thereupon found the issues for the plaintiff, and assessed the plaintiff's damages at $5000, and for that sum and costs the court, after denying the defendant's motion for a new trial, gave judgment for the plaintiff. That judgment has been affirmed by the Appellate Court, and this appeal is from the judgment of affirmance.

No complaint is made of the two instructions given to the jury at the instance of the defendant, it being conceded that the propositions of law there laid down are correct. But it is urged that the jury disregarded those instructions, and found the facts contrary to the preponderance of the evidence. Whether they did so or not is a question which can not be considered in this court. As presented here, the question whether the plaintiff, in negotiating the sale of the defendant's real estate, represented both seller and purchaser, without making known to the seller his relationship to the purchaser, is a mere question of fact, as to which the judgment of the Appellate Court is conclusive upon us, and that branch of the case, therefore, is not open for consideration in this court.

The case, as presented here, must turn upon the interpretation and effect to be given to the ordinance of the city of Chicago above set forth. Was the plaintiff, in negotiating the sale of the defendant's property, exercising the business of a real estate broker, within the meaning of the ordinance? If he was, it would seem very clear that the transaction was illegal, and that he is not entitled to recover for his services. The rule is, that where the subject matter of an agreement is prohibited and made unlawful by statute or by a municipal ordinance, it can not be enforced, though the statute or ordinance merely inflicts upon the offender a penalty, and does not in terms declare the contract void.

But we are of the opinion that the mere act of negotiating this one sale, so long as the plaintiff was not in the business of selling or negotiating sales of real estate, did not constitute him a real estate broker or bring him within

the purview of the ordinance. It will be noticed that the first section of the ordinance makes it unlawful for any person to exercise, within the city, the *business* of a real estate broker, and the third section defines the term "real estate broker" as meaning one engaged in selling or negotiating sales of real estate belonging to others, for a commission or other compensation. We think it plain that these provisions apply only to persons making the sale or negotiation of sales of real estate of others a business or occupation, and not to one who is not in the business, but negotiates a single sale. This view is sustained by numerous authorities, and we are referred to no cases where the contrary rule is laid down.

In *Chadwick* v. *Collins*, 26 Pa. St. 138, a statute in relation to granting licenses to individuals and partnerships residing in Philadelphia and Pittsburg, provided that no individual or co-partnership, other than those duly commissioned under the act, should use or exercise the business or occupation, among other things, of a real estate broker, under a penalty of $500 for each and every offense. It was held, that a real estate broker was one who engages in the purchase and sale of real estate as a business and occupation, and holds himself out to the public in that character and capacity, and that a contract by an individual to procure a purchaser for a house and lot for another in Philadelphia is not void on account of such person not having been licensed as a real estate broker. The court say: "In making the use or exercise of the business or occupation of real estate brokers in Philadelphia and Pittsburg a source of revenue to the commonwealth, the legislature did not intend to prevent a person whose business or occupation was not that of a real estate broker, from receiving compensation for services rendered in buying or selling real estate belonging to another. Any person may lawfully employ one who is not a real estate broker to buy or sell real estate, and where such employment takes place, and labor is done

under the employment, it must be paid for; at all events, the law will not lend its aid to the employer to defraud the employee out of his just reward." The same rule was held in *Shepler* v. *Scott*, 85 Pa. St. 329. See, also, *Johnson* v. *Hulings*, 103 Pa. St. 498.

In *Jackson* v. *Hough*, 38 W. Va. 236, a statute provided that no one, without a license, "should practice the business of a stock or other broker, by buying or selling for others stocks, securities or other property, for commission or reward," and in a suit brought by a person having no license as a broker, to recover for services in making a single sale of land, it was held that one single sale of land for reward, by one for another, without anything to show that the former professed to follow or practice the business of a broker, buying or selling for others stocks, securities or other property, for commission or reward, did not make him such broker, under the statute.

In *Love* v. *State*, 31 Texas Crim. 469, the occupation tax law provided that there should be levied and collected an occupation tax "from every traveling person selling patent or other medicine," of $175, and prohibiting any person to sell until the tax was paid. The defendant was prosecuted and convicted for pursuing the occupation of vending medicine without license, and punished by fine. It appeared that he was a colored Methodist preacher, traveling as a missionary in Texas, and that while in the discharge of his clerical duties he sold, at fifty cents per bottle, a mixture called "The Oil of Life," as a remedy for rheumatism. It was shown that he had sold three bottles while pursuing his missionary duties. There being nothing in the record suggesting that his clerical occupation was a mere cover or excuse to enable him to sell the medicine, it was held that the word "occupation," as used in the statute, means a vocation, trade or business in which one principally engages to make a living or to obtain wealth, and that the defendant was not one who traveled for the purpose of vending medicine,

within the meaning of the statute. The conviction, therefore, was reversed.

In *Graham* v. *State*, 13 South. Rep. 883, it was held that a pawnbroker who, in a solitary instance, takes a pistol in pledge for the repayment of a loan, and sells it for the payment of his debt, is not a dealer in pistols, within the meaning of the statute of Mississippi which provides that dealers in pistols shall pay a privilege tax of $100, and that he was not subject to the penalty against unlicensed dealers in pistols. See, also, *Eldorado County* v. *Meiss*, 100 Cal. 268; *City of East St. Louis* v. *Box*, 43 Ill. App. 276.

It may, perhaps, be said that the ordinance in the present case differs from some of the cases above cited, in that it furnishes its own definition of "real estate broker;" but we think the definition contained in the third section evidently contemplates an occupation in which the broker engages as a business, and that a single act of selling or negotiating a sale of real estate does not constitute a person a broker, within the terms of such definition.

It follows, from what has been said, that the ordinance presents no obstacle to a recovery by the plaintiff for obtaining a purchaser of the defendant's property according to the terms of his contract, and that the court properly refused the instructions based upon the ordinance.

We see no ground for dissenting from the view of the law taken by the courts below, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*