Clinton B. SNYDER, Plaintiff-Appellee,

v.

STATE-WIDE PROPERTIES, INC., a corporation, Defendant-Appellant.

No. 13828.

United States Court of Appeals
Seventh Circuit.

Nov. 15, 1962.

Rehearing Denied Jan. 9, 1963.

Rehearing Denied Jan. 9, 1963, en banc.

Harlan L. Hackbert, Chicago, Ill., for appellant.

Eli E. Fink, Chicago, Ill., Harry Golter, Chicago, Ill., for appellee.

Before DUFFY, KNOCH, and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Clinton B. Snyder, plaintiff-appellee, instituted this diversity action in the District Court against State-Wide Properties, Inc., defendant-appellant, to recover commission alleged to be due for services as a real estate broker in producing a buyer alleged to have been ready, willing and able to purchase defendant's property at the price and on the terms and conditions stipulated by the defendant. The cause was tried to a jury which returned a verdict for the plaintiff upon which the trial court entered judgment against the defendant for $152,800. The defendant appealed.

The defendant contends the trial court erred in denying defendant's motion for directed verdict as renewed in its motion for judgment notwithstanding the verdict, in rulings on evidence, in the giving and refusing of instructions, and in denying defendant's alternative motion for a new trial.

In the posture in which the case reaches us we conceive that the defendant's contentions in support of the claims of error it makes on appeal combine to precipitate the following basic contested issues:

(1) Whether provisions of the Illinois Real Estate Brokers and Salesmen Act or of the Municipal Code of the City of Chicago, Illinois (§§ 113–22 to 113–29 inclusive), preclude recovery by the plaintiff.

(2) Whether an issue as to the applicability of the municipal ordinance, on the evidence adduced, involved a question of fact required to be submitted to the jury for resolution.

(3) Whether there is any evidence to support a jury finding that the plaintiff produced a buyer ready, willing and able to purchase at the price and on the terms and conditions stipulated by the defendant.

(4) Whether the District Court's refusal to grant a new trial on the claim of newly discovered evidence constituted an abuse of discretion.

Defendant's contention that Section 2b of the Illinois Real Estate Brokers and Salesmen Act (Ill.Rev.Stat. 1957, ch. 114½, par. 2b) [1] and Section 113–29 of the Chicago ordinance [2] bar the plaintiff from recovery is grounded on the fact that for the most part the negotiations with the defendant's president, Maurice H. Kamm, and the prospective purchaser, Charles P. Ryan, a New York real estate investor, were carried on in behalf of the plaintiff by Max Seigel, a New Jersey resident and New York real estate broker, who was not registered under the Illinois statute as a real estate broker or salesman, and that

[1]. § 2b provides: "No action or suit shall be instituted, nor recovery therein be had, in any court of this State by any person * * * for compensation for any act done or service rendered, the doing or rendering of which is prohibited under the provisions of this Act to other than registered real estate brokers or real estate salesmen unless such person * * * was duly registered hereunder as real estate broker or real estate salesman prior to the time of offering to perform any such act or service or procuring any promise or contract for the payment of compensation for any such contemplated act or service."

[2]. § 113–29 provides: "No person shall pay any commission or other compensation to any person for negotiating contracts of real estate other than to real estate brokers licensed under this chapter."

neither the plaintiff nor Seigel were licensed under the Chicago ordinance as a real estate broker, although the plaintiff, a New Jersey resident, did have a certificate of registration or license as an Illinois real estate broker, issued to him under the Illinois statute.[3]

But Section 1 of the Illinois statute (ch. 114½, par. 1) expressly provides that:

"* * * nothing in this Act contained shall prohibit the cooperation of, or a division of, commissions between a duly registered broker of this State and a non-resident broker having no office in this State."

Seigel had no office in Illinois. He was a New York broker. His activities in connection with the negotiations on behalf of plaintiff, a licensee of Illinois, therefore neither required that he possess an Illinois registration nor preclude a recovery by plaintiff. Moreover, neither § 2b of the statute nor any other provision thereof purports to deny recovery by an Illinois licensee because of his employment or utilization of an unlicensed person's services. If it be assumed that Seigel's activities were prohibited by the statute, § 2b precludes any recovery by him not by plaintiff. The interdiction of the section is limited to recovery by unlicensed persons. Cf. C. B. Snyder Realty Co. v. Sherrill-Noonan, Inc., 3 Cir., 261 F.2d 269, 272.

In so far as the Chicago ordinance is concerned it is clear from the record that neither plaintiff nor Seigel was engaged in the real estate brokerage "business" in Chicago. Neither maintained an office there and there was no evidence that either had acted as broker in Chicago in connection with any other real estate transaction occurring in Chicago or involving Chicago real estate. And, the Chicago ordinance, unlike the state statute,[4] does not require a broker's license

for an isolated transaction. This has been the construction placed on the ordinance by the Illinois courts when such question was in issue. O'Neill v. Sinclair, 153 Ill. 525, 39 N.E. 124; Greenburg v. Nyberg Automobile Works, 162 Ill.App. 504; Vossler v. Earle (Abst. Op.), 194 Ill.App. 522, aff'd 273 Ill. 367, 112 N.E. 687. Cases such as Bicek v. Royal, 307 Ill.App. 504, 30 N.E.2d 747; Usher v. McGowan, 20 Ill.App.2d 201, 155 N.E.2d 830 and In re Winston v. Kaspar American State Bank, 36 Ill.App.2d 423, 184 N.E.2d 725, do not hold that the ordinance precludes recovery by an unlicensed person in the case of an isolated transaction. In those cases it does not appear that any claim was made that the transaction was but an isolated one—or that the unlicensed person denied recovery was not engaged in the brokerage "business" in the City of Chicago. We are bound by the construction the Illinois courts have placed on the Chicago ordinance. The 1939 amendment of § 113–29 to read as it now does did not in our opinion expand the scope of the ordinance to prohibit an isolated transaction by an unlicensed person. The amended section must still be read in the context in which it appears—a context long recognized by the Illinois courts as not requiring licensure for an isolated transaction.

We are not persuaded by the defendant's argument to the effect that plaintiff's or Seigel's occupation and business as real estate broker elsewhere serves to require that the ordinance be construed as mandating that either be licensed for an isolated Chicago transaction. Cf. Vossler v. Earle, supra, where an Indiana broker not licensed in Chicago was permitted to recover for an isolated transaction. The question here involved is the scope of the ordinance's requirements and prohibitions and not whether plaintiff or Seigel are engaged in the real estate

---

3. This certificate of registration or license apparently was issued under § 12 of the Illinois statute which provides for the issuance of such certificates to non-resident brokers.

4. The ordinance contains no provision comparable to the provision of § 1 of the State statute that: "The commission of a single act prohibited by this Act constitutes a violation of this Act." Ill.Rev. Stat.1957, ch. 114½, par. 1.

brokerage "business" elsewhere than in Chicago. Their licensure to engage in the business elsewhere certainly is no disqualification requiring that they be singled out for treatment different from persons who are not engaged in such an occupation. In fact such licensure elsewhere serves to attest to the personal qualification, knowledge and training of each to serve the public in such capacity.

 In connection with the second contested issue suffice it to point out that there was no evidence as to either plaintiff's or Seigel's participation in other Chicago transactions which required that a factual issue as to whether the instant matter was but an isolated transaction be submitted to the jury. On the evidence adduced (and we find no error in the exclusion of evidence) the questions as to the application of either the state statute or the municipal ordinance were matters of law to be resolved by the trial court. O'Neill v. Sinclair, supra.

 There are conflicts in the testimony bearing on the issue as to whether Ryan, the New York real estate investor produced by the plaintiff, was ready and willing to buy defendant's building on the terms it had stipulated through its president, Kamm, who was the owner of approximately seventy-five per cent of the corporation's stock. Defendant contends that the extent of the renovation work in process to be completed at its expense and a matter as to whether Kamm was to be given a five year contract to manage the building remained unresolved. But from a careful review of the record we are convinced that there was substantial evidence to support the findings implicit in the jury's verdict.

 We are of the opinion that the trial court did not abuse its discretion in refusing to grant a new trial on the basis of defendant's claim of newly discovered evidence. Defendant's motion asserted its post-trial discovery that in a letter written by Seigel it was indicated that Ryan was to receive a part of plaintiff's commission. Defendant asserts that such evidence opens up a wholly new defense.

But defendant has been unable to point to any authority which holds or are we aware of any reason why a seller's broker who gives up part of his commission to the *purchaser* has breached any duty to the seller which would preclude him from recovering his commission. Such action is much different from a collusive pooling of commissions between brokers—in which case the interests of their respective principals could suffer. Nor is the situation akin to that in which the broker is paid by the purchaser as well as the seller, and is thereby violating his duty to the seller. In fact, a seller's broker who gives up part of his commission to the purchaser in order to enable his principal to make the sale does not act to the detriment of or breach his duty to his principal—he goes beyond his duty to his principal in sacrificing part of his commission to advance the interest of his principal. See: 12 C.J.S. Brokers § 72.

The judgment order of the District Court is affirmed.

Affirmed.