<hr />

WALTER C. WYMAN

*v.*

CHESTER K. SNYDER, Admr.

*Filed at Ottawa November 17, 1884.*

1.  CONTRACT—*whether amounting to an equitable assignment, or merely creating the relation of debtor and creditor.*  An agent appointed by the owner to sell coal lands upon commission, employed another to aid him in effecting a sale, promising to give the latter, as was claimed, one-half of his commissions in case of a sale at a given price, which sale was effected through the latter, and after the death of the former the latter presented a claim against his estate for one-half of the commissions received.  It was *held,* on a review of the evidence, there was no equitable assignment of half of the claim for commissions, but that the relation between the two was merely that of creditor and debtor.

2.  EVIDENCE—*as to whether a transaction amounted to an equitable assignment.*  The burden of proof is upon a party who claims an equitable assignment of one-half of a demand, to show that fact by satisfactory evidence; and this is not shown by proof of casual admissions or statements of the party holding the demand, varying in form of expression and in substance, especially when rebutted by the conduct and acts of the party claiming the assignment.

APPEAL from the Appellate Court for the Second District ;—heard in that court on appeal from the Circuit Court of Grundy county; the Hon. FRANCIS GOODSPEED, Judge, presiding.

Mr. M. J. SCRAFFORD, and Mr. W. S. JOHNSON, for the appellant:

The agreement between Benson and the appellant being founded upon a sufficient consideration, constituted an equitable assignment of $2500 of the fund, which, as between the assignor and assignee, or their representatives, created an equitable lien thereon, and no notice to the debtor was necessary. Story's Eq. Jur. sec. 1040; 2 White & Tudor's Leading Cases in Equity, (Hare & Wallace's notes,) 204; Colebrooke on Collat. Sec. sec. 424, pp. 571, 572, and cases cited; *Kenyon* v. *See*, 94 N. Y. 568; *Williams* v. *Ingersoll*, 89 id. 519; *Coates* v. *Donnell*, 48 id. 46; *Wellsburg Bank* v. *Kimberlands*, 16 W. Va. 555; *Ranken* v. *Alfaro*, L. R. 5 Ch. Div. 786; *In re Mann*, id. 367; *In re Irving*, L. R. 7 id. 419; *Smith* v. *Everett*, 4 Bro. Ch. 64.

Not only can a chose in action be assigned by parol, but a lien upon it can be created by parol. Colebrooke on Collat. Sec. 573; *Williams* v. *Ingersoll*, 89 N. Y. 521; *Thayer* v. *Daniels*, 113 Mass. 129; *Kingman* v. *Perkins*, 105 id. 111; *Dix* v. *Cobb*, 4 id. 508; *Stout* v. *Yaeger Co.* 13 Fed. Rep. 802; *Risley* v. *Phœnix Bank*, 83 N. Y. 328; *Patten* v. *Wilson*, 34 Pa. St. 299.

The estate of Ira F. Benson is insolvent, and the appellant can not collect his debt in the ordinary course of administration. The appellant is therefore entitled to relief in a court of chancery. *McDaniel* v. *Cochrane*, 11 Ill. 31; *Bay* v. *Cooke*, 31 id. 36; *O'Brien* v. *Coulter*, 2 Blackf. 421; *Steere* v. *Hoagland*, 39 Ill. 264.

Messrs. HILL & DIBELL, for the appellee:

That the fund is not a trust fund, and that the relation of debtor and creditor alone was created, see *Douglas* v. *Martin*, 103 Ill. 29; *Taylor* v. *Turner*, 87 id. 302; *Wilson* v. *Kirby*, 88 id. 570; *Weer* v. *Gand*, id. 492; *Steele* v. *Moore*, 77 id. 473.

An agreement to pay out of a particular fund, however clear, is not an equitable assignment. *Christmas* v. *Russell*, 16 Wall. 84; *Trist* v. *Child*, 21 id. 447; 2 Hare & Wallace's notes to Leading Cases, 233.

Such an agreement does not give an equitable lien upon the fund. *Rogers* v. *Hosack*, 18 Wend. 319; *Christmas* v. *Griswold*, 8 Ohio St. 559; *Eib* v. *Martin*, 5 Leigh, 148.

Where the owner does not irrevocably part with all his rights against his debtor, and surrender all his control over the fund, there is no assignment. *Hoyt* v. *Story*, 3 Barb. 262; *Gibson* v. *Stone*, 43 id. 290; 2 White & Tudor's Leading Cases in Equity, 1644.

Mr. Justice Mulkey delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the Second District, affirming a decree of the circuit court of Grundy county, dismissing a bill filed therein by Walter C. Wyman, the appellant, against the appellee, Chester K. Snyder, as administrator of Ira F. Benson, deceased, to enforce an alleged assignment of a verbal contract.

The bill charges that some time during the month of May, 1880, Ira F. Benson, then of Grundy county, but since deceased, made an agreement with the complainant, but not in writing, that in consideration that the complainant would sell, or help him, said Benson, to sell, about twelve hundred acres of coal lands, located in or in the vicinity of Braceville, Grundy county, and known as the "Braceville mines," for the sum of $85,000, which lands he, said Benson, had for sale, as the agent for Bruce, Reno & Little, the owners of the same, he, said Benson, would give and pay to the complainant one-half of a commission of $5000, which the said Bruce, Reno & Little had agreed to pay him, said Benson, should he effect a sale of said lands for said sum of $85,000, and that Benson then agreed with complainant that when said

sale was completed for said sum of $85,000, one-half of said sum of $5000, or the sum of $2500, should belong to and become the property of the complainant. The bill then shows that complainant was on intimate business relations with the officers of the Chicago, Milwaukee and St. Paul Railway Company, through whom he learned that that company desired to purchase coal lands in the vicinity of the Braceville mines, and that in pursuance of the above agreement complainant introduced Benson to Lowry, an agent and expert coal examiner of the said Chicago, Milwaukee and St. Paul Railway Company, who, in connection with complainant and Benson, visited the said Braceville mines, and made an examination of the same, and by his report to the company advised the purchase thereof, which was subsequently carried into effect through the agency of Benson, assisted by complainant, at the price and consideration of $85,000. The answer admits the sale of the mines by Benson, for Bruce, Reno & Little, at $85,000, and that Benson was to receive from them $5000 for making the sale, but denies that complainant has any interest in or lawful claim to the same, or any part thereof. The record shows that before Benson's death a controversy arose between Benson, and Bruce, Reno & Little, about the payment of his commission or compensation for making the sale, which resulted in his agreeing to make a deduction on the claim, of $500. This understanding was carried out after Benson's death, the $4500 being paid to Snyder, as his administrator.

We think it clear, from the proofs, that appellant assisted Benson in effecting a sale of the mines, and that there was an agreement of some kind between them with respect to the commissions to be paid by Bruce, Reno & Little; but just what that agreement was, does not satisfactorily appear. It does, however, sufficiently appear, that upon the payment of the commissions appellant was to receive one-half of them, or a sum equal to one-half of them; and the question is whether

the agreement between them, whatever it was, amounted to an assignment, in equity, of one-half the debt or claim, or whether it merely created the relation of debtor and creditor between them upon the collection of the same. Had the estate of Benson proved solvent, it would have been a matter of indifference whether the one or the other of these views prevailed; but as his estate will pay something less than fifty cents on the dollar, the difference becomes quite material,— hence this suit.

The burden of proof is, of course, upon the appellant to show, by satisfactory evidence, that there was an actual assignment to him of one-half of the debt or claim against Bruce, Reno & Little, as contradistinguished from a mere promise or undertaking on Benson's part to pay appellant one-half of such debt or claim when collected. Has appellant done this? We think not. No witness has testified, nor does it otherwise appear, when or where the supposed agreement was made, nor is there any witness who pretends to give, or instrument or document that purports to contain, the terms of such an agreement. The evidence relied on to establish it consists of the conduct of the parties, and casual admissions or statements of Benson, made at different times, and varying both in form of expression and in import. The substance of this evidence is as follows: Witness Kelsey states: "I know he (meaning Benson) said he would give him (meaning appellant) part of the commissions. His language about Wyman was, he intended to give him a part." Again, the same witness says: "He told me Wyman was to have a part of the commission." Witness Miner states that on one occasion when witness and Benson were speaking of the amount of commissions, the latter told him, in reply to the suggestion they were too much, "that he had *to divide* with Wyman." In another portion of his testimony this witness says: "Benson said to me, whatever commissions I paid him, Mr. Wyman was interested with him in that."

Outside of the conceded fact that appellant did assist Benson in making the sale, the above loose and casual statements are all the evidence in support of the hypothesis there was an assignment, in equity, of one-half of the latter's claim on account of commissions. We are clearly of opinion they were altogether insufficient for that purpose. On the contrary, we think, taking the evidence altogether, it shows simply a personal undertaking on the part of Benson to pay appellant one-half of whatever commissions he collected on the sale; and that such was the understanding of the parties themselves we think is abundantly shown by their own conduct. Had there been an assignment, in equity, of one-half of the commissions in question, as is contended by appellant, the latter would have ceased to have any further claim against Benson or his legal representatives with respect to them after the sale was effected. His claim, in that event, would have been against Bruce, Reno & Little. Yet it is clear that the parties did not so regard their relations. This is demonstrated beyond all controversy, so far as appellant is concerned, by his filing the claim, in the first instance, against Benson's estate.

The case is too clear, upon the facts, to require any further discussion of it at our hands. We regard the decree of the circuit court as altogether proper, and consequently there was no error in its affirmance by the Appellate Court.

The judgment will be affirmed.

*Judgment affirmed.*