The Louisville, New Albany and Chicago Railway Company

*v.*

The Diamond State Iron Company.

*Filed at Ottawa November 15, 1888.*

1.  Contract—*division of commissions between brokers of buyer and seller—effect upon the validity of the sale as between the principals.* The mere fact that brokers, respectively, of a buyer and seller of a certain commodity, agree that as between themselves they will divide the commissions earned in the transaction, will not invalidate the contract of sale as between the principals.

2.  In a suit by the seller against the buyer for non-compliance with the terms of the sale, where such agreement between the brokers of the respective parties was interposed as a defense, it was considered, that in the absence of anything to show the seller had knowledge of such agreement, or used any improper means to induce the broker of the buyer to act against the interest of his principal, the defense could not prevail.

3.  Same—*contract of sale — non-acceptance by purchaser — shipping directions omitted.* A contract for the purchase of a quantity of railroad spikes, provided that the spikes were to be delivered at the mills of the seller, to be shipped, a part on a given date, and the residue at a subsequent time mentioned, shipping directions to be given by the buyer. The lot first to be shipped was received by the buyer, but the remaining part was not accepted. By reason of such non-acceptance the seller brought suit. It was *held,* that the withholding of proper shipping directions by the buyer, exonerated the seller from any duty to make the shipment, and the plaintiff's right of recovery was not affected by his failure to do so.

4.  Shipping directions had been given at one time, but, before any shipment was made, were countermanded by the buyer, with the request that the seller would delay action under them. The buyer could not complain that his request was complied with.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Kirk Hawes, Judge, presiding.

Mr. William Armstrong, for the appellant:

Cherrie & Co. and Levis & Co. being brokers, respectively, for the seller and buyer, an agreement between them to divide the commission of the latter with the former company, rendered the contract fraudulent and void, unless it was done with the knowledge and consent of the principal of Cherrie & Co., and of this there is no evidence in the record. *Adams Mining Co.* v. *Center*, 26 Mich. 73 ; *Caldwell* v. *Iron Co.* 36 id. 51.

The only condition precedent to be performed by the buyer was to give shipping directions. This was done on April 15, 1880, and it then became the duty of the seller, as a condition precedent to the receipt of the price, to deliver the spikes to some carrier, and draw a sight draft for the price. *Filley* v. *Pope*, 115 U. S. 220 ; *Rolling Mill* v. *Rhodes*, 121 id. 255.

The plaintiff, asserting that the contract was still in force, was bound to show such performance as entitled him to demand performance on their part, and having failed to do so, can not maintain this action. *Norrington* v. *Wright*, 113 U. S. 205.

If a request to withhold the shipment amounted to a withdrawal of the shipping directions, they could only be withdrawn by the consent of the plaintiff, and such consent amounted to the rescission of the contract. If the contract was rescinded, an action could not be maintained thereon, but the plaintiff would be forced to sue upon a *quantum meruit* for what it had done under the contract. *Cutter* v. *Powell*, 2 Smith's Leading Cases, (7th Am. ed.) 43 ; *Planch* v. *Colburn*, 8 Bingh. 14.

Mr. Frank J. Loesch, for the appellee :

An agent or broker acting for both principals, unknown to them, can not recover for services from either; but this will not render the contract of the principals void. *Merritt* v. *Clason*, 12 Johns. 102 ; *Everhart* v. *Searle*, 71 Pa. St. 256 ; *Meyer* v. *Hanchett*, 39 Wis. 419.

The appellee need not have called for shipping directions, since, "where the vendee is by the terms of the contracts to

designate a place of delivery, the vendor is bound to be ready to make delivery at the place designated. If the vendee omits to designate the place, the vendor is guilty of no breach of contract if the articles are ready for delivery at the time fixed by the contract." *Lucas* v. *Nickols*, 5 Gray, 309.

In cases of prevention by the party, or of tender and refusal, the plaintiff has a right of action on the special contract, prevention or refusal being equivalent, for that purpose, to performance. 2 Smith's Leading Cases, 53.

When it is conceded that shipping directions were a first requisite to the performance of plaintiff's part, it necessarily follows that in default of, or upon a withholding of such directions, the plaintiff could not ship and compel acceptance of the spikes. The railway company might be willing to respond in damages for its breach of the contract, but not want the spikes, and it could not be forced to pay for the spikes and freight added, when the goods were not shipped by its directions, under the contract. *Tascott* v. *Rosenthal*, 10 Bradw. 630; *Clark* v. *Marsiglia*, 1 Denio, 317.

Where the action of one party has resulted in a breach, the other can not insist upon performing the contract to the end. *Clark* v. *Marsiglia*, 1 Denio, 317; Bishop on Contracts, secs. 839, 842.

Whether the suspension and then renewed shipping directions as to part of the contract was a rescission, depends entirely on the parties. If they did not consider it or act on it as a rescission, the law does not insist upon making it a rescission in spite of their intentions to the contrary. *Roberts* v. *Benjamin*, 124 U. S. 64.

Mr. Justice Magruder delivered the opinion of the Court:

This is an action of assumpsit, brought in the Superior Court of Cook County by the appellee against the appellant to recover the amount of loss claimed to have been sustained by the appellee on account of the alleged failure of the Chicago

and Indianapolis Air Line Railway Company to accept 2000 kegs of railroad spikes sold to it by appellee. The cause was submitted to the court for trial without a jury; verdict was rendered for the plaintiff for $3000.00 and judgment on verdict. Upon appeal to the Appellate Court of the first district the judgment was affirmed, and appellant prosecutes its further appeal to this Court.

The appellee is a corporation organized under the laws of Delaware and doing business at Wilmington in that state. In February, 1880, it made a contract with said Air Line Railway Company to sell to the latter 2500 kegs of railroad spikes of 150 lbs. each, of the best quality, of its own brand, at $4\frac{1}{4}$ cents per pound, payable by sight draft, with bill of lading attached, upon Henry Crawford, President of the Air Line Railway Co. at Chicago, the spikes to be delivered at the seller's mill in Wilmington, to be shipped one half about April 15, 1880, and balance early in May, 1880, shipping directions to be given by the buyer, and the seller guaranteeing that the freight from their mill to any point in the west should not exceed the rate from Philadelphia to same point. The contract was made and the negotiations and correspondence were carried on between Cherrie & Co. of Chicago, as brokers for the Air Line Railway Co., and Levis & Co. of Philadelphia as brokers for appellee. On May 31st, 1880, 500 kegs of the spikes were shipped and received by Crawford, and paid for by him after considerable delay. The remaining 2000 kegs were never accepted by the Air Line Railway Co., and it is on account of such failure to accept them, that this suit is brought.

The Chicago and Indianapolis Air Line Railway Company was consolidated with the Louisville, New Albany and Chicago Railway Company, the appellant herein, and was taken charge of by appellant and adopted the latter's name. It is not claimed, that, if the Air Line Railway Co. is liable, the appellant Company is not also liable.

The proof tends to show that, at the date of the refusal to accept the spikes, the market price had declined, entailing upon appellee a loss of $1.50 per keg or $3000 for the 2000 kegs.

The only errors assigned by appellant and insisted upon by its counsel grow out of the refusal of the trial court to hold as law certain propositions submitted to it.

The proof tends to show, that an agreement was made between Cherrie & Co., brokers of the Air Line Railway Company, and employed by that company to buy the spikes, and Levis & Co., brokers of appellee, by the terms of which Levis & Co. were to divide with Cherrie & Co. the commissions to be paid them by appellee for selling the spikes. The second of the refused propositions holds that, if, during the pendency of the negotiations for the purchase of the spikes, such an agreement was made without the knowledge or consent of the Air Line Co., the contract sued upon in this case is fraudulent and void as against such company. The proposition is erroneous and was properly refused.

If this were a suit by Cherrie & Co. against the Air Line Co. to recover compensation for services in making purchase of the spikes, the Company might urge such an agreement as a defense. But this is a suit by appellee as principal upon the contract with the Air Line Co. There is no evidence that appellee knew of any agreement by its brokers to divide commissions with Cherrie & Co. It used no improper means to induce the brokers of the purchaser to act against the interest of their principal. We know of no principle, upon which the contract can be held fraudulent and void as against appellee by reason of the arrangement between the brokers made as it was without appellee's knowledge.

The third of the refused propositions asserts that, if, after the 500 kegs were shipped, plaintiff below did not ship the remaining 2000 kegs, the finding should be for the defendant. This proposition is erroneous as leaving out of view the question whether or not the Air Line Co. gave the shipping directions,

which it was bound to give before the plaintiff could be compelled to forward the balance of the kegs.

By the terms of the contract the buyer was to give shipping directions. Cherrie swears that Crawford, the president of the Air Line Co., "gave us directions at one time for 500 kegs; said he would give us the order as *to the rest* later." Todd says: "It was not until the latter part of May that we had shipping instructions for the first shipment; on May 31st we shipped the 500 kegs of spikes," etc. The proof shows that the sight draft, drawn by the plaintiff on Crawford for $3187.50, the price of the 500 kegs, in accordance with the terms of the contract, was not paid until August 16, 1880, and then only $500 in cash and the balance in Crawford's 30 day note, which was protested for non-payment at its maturity. The proof also shows, that, during this period while plaintiff was trying to collect the money due for the 500 kegs, its brokers were continually calling for shipping instructions as to the remaining 2000 kegs, which instructions, however, were not forthcoming. On June 15, 1880, Levis & Co. write to Cherrie & Co.: "We will also be pleased to receive any instructions or suggestions as to future shipments, if you have any to make." On June 17, 1880, Cherrie & Co. write to Levis & Co.: "We saw Mr. Crawford and he said very frankly that he intended to pay for the spikes, but could not do so just now, and could not say definitely when he could, and that he would like them *held a little while.*" On June 29, Levis & Co. telegraph to Cherrie: "shall we ship the balance at once"? On August 10, Levis & Co. write to Cherrie & Co.: "Let us know when he proposes to take the balance of the spikes." On August 16, Levis & Co. write to plaintiff: "They (Cherrie & Co.) write in reply to our inquiry that as yet they have not been able to ascertain anything in regard to Mr. Crawford's intentions as to the balance of the contract," etc.

The sixth, eighth and tenth of the refused propositions proceed upon the assumption, that on April 15, 1880, the Air Line

Co. gave shipping directions for all of the 2500 kegs and were not bound thereafter to give any further directions, and that the obligation was thereby imposed upon the plaintiff to proceed with the shipment of the whole lot of 2500 kegs. The refusal of these propositions was clearly right, as they ignore a very material part of the evidence.

As already stated, there is proof to the effect that Crawford directed only 500 kegs to be shipped at one time. The correspondence shows, that, on April 15, 1880, his brokers, in answer to a telegram from Levis & Co. dated April 13 and asking for shipping directions, wrote to Levis & Co. to begin to ship on May 1st, although, by the terms of the contract, one half were to be shipped April 15 and the balance early in May, 1880. Before May 1, towit: on April 28, plaintiff was told: "after May 15, you may ship the 2500 kegs," etc. Before May 15, to wit: on May 14, Crawford telegraphed: "Present freight rates from East excessive; pending new arrangements, *desire nothing shipped;* when, we will advise you." On May 25, plaintiff was again told that it was "advisable not to ship the spikes for a few days." After the Air Line Co. thus changed and modified its original instructions of April 15 and requested plaintiff to delay action under them, it can not complain that plaintiff complied with its request. The evidence is clear that the Air Line Railway Co. did not have the money to pay for the spikes and was trying to gain time and yet not to lose the benefit of the contract.

We see no error in the record. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Justice Bailey, having heard this case in the Appellate Court, took no part in this decision.