Herbert G. Wickenhauser, Plaintiff-Appellee, v. Virgil Selhime and Mildred Selhime, Defendants-Appellants, John W. Lock and Dorothy M. Lock, Defendants.

Gen. No. 65–103.

Fifth District.

October 13, 1966.

Rehearing denied November 18, 1966.

Emerson Baetz, of Alton, for appellants.

Green & Hoagland, of Alton (Robert B. Maucker, of counsel), for appellee.

MORAN, J.

Defendants Virgil Selhime and Mildred Selhime, the contract sellers, appeal from an adverse judgment of the trial court in a suit for specific performance of a contract to convey real estate. John W. Lock and Dorothy M. Lock who purchased the real estate involved in the suit after the contract between plaintiff-appellee Herbert G. Wickenhauser and the Selhimes was entered into, were joined as defendants in the trial court.

The trial court, after hearing the evidence and reviewing the briefs filed by all of the parties, wrote an extensive opinion and order finding for the plaintiff and ordering all of the defendants to convey the real estate to the plaintiff. Defendants Lock do not appeal from the judgment of the trial court.

Defendants-appellants contend (1) that since the contract of sale under which plaintiff sued contained a provision that time was to be considered as of its essence and since plaintiff did not sue within that time, plaintiff's suit for specific performance of the contract must fail because there was no waiver of the time provision under the evidence in this case, and (2) that since plaintiff once refused a title tendered by the vendor under the contract, he cannot now sue for specific performance so as to compel the vendors to convey to him the title he once declined.

The principal question before this tribunal is whether or not there was an evidentiary basis for the judgment of the trial court.

On April 3, 1964, the plaintiff, Herbert G. Wickenhauser, entered into a contract with the defendants Virgil

■■■■■■■■

Selhime and Mildred Selhime to purchase the following described property:

> "2703 Godfrey Road, Township of Godfrey, better known as Selhime's Restaurant, brick building and land, approximately 138' fronting Godfrey Road, approximately 200' deep . . . ."

The contract, partly printed and partly typewritten, recited that $6,700 had been received as "part payment" and that if the remaining $60,300 were paid within thirty days a conveyance would be made.

The contract contained a printed provision that "should the title to the property not prove good, then (the) $6,700 (would) be refunded, (b)ut should the said Herbert G. Wickenhauser fail to perform this contract on his part promptly at the time and in the manner above specified (time being of the essence of this contract), then the above $6,700 shall be forfeited by him as liquidated damages, and the above contract shall be and become null and void."

The Selhimes had listed this property for sale with Frank Wickenhauser, a real estate broker in Alton, Illinois, and Herbert G. Wickenhauser purchased the property through this agency. Herbert Wickenhauser, the purchaser, obtained an abstract of title to the property purchased and hired Bruce Quackenbush, an Alton lawyer, to examine it for him. Quackenbush found that there was a five-foot "spite strip" or tract of land five feet wide, running between a street known as Tibbett Street, to the east or rear of the Selhimes' land and the Selhimes' land itself.

At the inception of the transaction Selhime had told Frank Wickenhauser that Harry Marshall, an Alton lawyer, was his attorney; and when Herbert received Quackenbush's opinion he got in touch with Frank who, in turn, communicated with Marshall. Herbert, Frank and

415

Marshall then had a conference the day following the date of Quackenbush's opinion, April 21, 1964. At this meeting, according to Marshall's testimony, Herbert said the five-foot strip was of significance to him, because he wanted ingress to and egress from the land he was buying in respect of Tibbett Street. But Marshall stated that in his view the contract with the Selhimes obliged them to convey only what they owned; and that the five-foot strip was not within the description.

Another meeting was held May 14, 1964. This was attended by Virgil Selhime, Harry Marshall, his attorney, and Frank and Herbert Wickenhauser. There was a difference in the testimony of the persons attending as to what transpired. Selhime and Marshall, his attorney, testified that Marshall drew out a deed, previously signed and acknowledged by Selhime and his wife, and tendered it to Herbert, but that Herbert refused it. Herbert and Frank denied that a deed was tendered. All parties agreed, however, that Marshall had said that Selhime was willing to convey what he owned, i. e., the land without the five-foot strip or rights across it, but that Herbert refused at that time, insisting that title to the five-foot strip be given him, or that some arrangement be made for a right-of-way over it, as a condition to his accepting conveyance from the Selhimes and paying them their money.

Herbert testified that the next thing he said was, "It's up to you folks," and that he then turned on his heel and walked out of the meeting. Selhime said that he slammed the door and walked out after calling him, Selhime, a liar.

Five days later Herbert talked to Marshall on the telephone. Marshall then asked him again if he would accept the deed, adding that the Selhimes considered that the agreement had been breached by his failure to accept it. Herbert simply said, "My position is not changed."

Herbert testified that about a week after the May 14 meeting, Frank approached him for a contribution

416

towards clearing up the five-foot strip, and that he, Herbert, said he would pay $250 towards it. Marshall testified that on May 25 Frank told him Herbert might be willing to share costs in connection with the five-foot strip. Marshall also testified that through June of 1964 he had conversations with Frank and one Wisenflu, who appeared to own an interest in the five-foot strip, and with one Ritchie Gibbons, a title insurance representative, about insurance on the five-foot strip title.

On July 15, 1964, Selhime and his wife contracted to sell the property in dispute to the defendants Lock. On July 24, 1964, the Selhimes, through their attorney, Marshall, wrote Herbert Wickenhauser as follows:

> You are hereby notified that pursuant to the terms of that certain contract dated April 3, 1964, between Virgil E. Selhime and Mildred Selhime, as sellers, and Herbert G. Wickenhauser as buyer, for the sale of property in the Town of Godfrey, in the County of Madison and State of Illinois, described therein as 2703 Godfrey Road, Township of Godfrey, the sellers elect to cancel and terminate the same because of nonperformance of the terms thereof, on the part of the buyer, and demand of buyer the sum of $6,700 as liquidated damages to be forfeited by buyer, all as provided in said contract.

On August 4, 1964, Herbert Wickenhauser, through his attorneys, Green and Hoagland, of Alton, Illinois, responded in writing as follows:

> As attorneys for Herbert G. Wickenhauser, we acknowledge receipt of your letter of July 24, 1964.
> In the first place, your attempted cancellation and termination of the contract dated April 3, 1964, between Virgil E. Selhime and Mildred Selhime, as Sellers, and Herbert G. Wickenhauser, as Buyer, for the sale of the property in the Town of Godfrey,

417

Madison County, Illinois, described as 2703 Godfrey Road, is completely and entirely rejected. There is no provision whatsoever in said contract for cancellation and termination by the Sellers.

Herbert G. Wickenhauser has stood ready at all times to comply with the terms of the contract when the Sellers should tender a good and sufficient Warranty Deed of Conveyance. To date such tender has not been made.

You are hereby advised that Herbert G. Wickenhauser now stands ready to comply with the terms of the contract and you may consider this a demand on his part that your clients, Virgil E. Selhime and Mildred Selhime deliver to him a good and sufficient Warranty Deed of Conveyance immediately.

It is noted that a copy of your letter was addressed to Frank Wickenhauser. Therefore, a copy of this letter is being forwarded to Frank Wickenhauser advising him of Herbert G. Wickenhauser's readiness to comply with the terms of the contract. In the event Frank Wickenhauser still has the part payment of $6,700 in his possession, he is instructed to retain the same until the Sellers have complied with the contract.

In the meanwhile, on July 29, 1964, the Selhimes had conveyed the property to the defendants Lock.

On September 23, 1964, Herbert Wickenhauser filed suit against the Selhimes and the Locks, seeking specific performance of his contract with the Selhimes. After trial, the court found for the plaintiff and ordered the Selhimes and the Locks to convey the property to Herbert Wickenhauser upon his payment of $60,300, the unpaid balance of the purchase price.

Following the overruling of motions for rehearing, this appeal followed.

It is to be noted that Herbert Wickenhauser's suit and the decree in his favor, cover the principal property only; nothing is mentioned, claimed or adjudged concerning the disputed five-foot strip.

The trial court reviewed the evidence and held that the time provision in the contract was waived, saying:

. . .

The evidence, without dispute, shows that the parties did not abide by the 30-day time limit in the contract. The 30 days would have expired on May 3, 1964. The first meeting, as testified to by Harry Marshall, attorney for defendants Selhimes, was held on April 21, 1964 and plaintiff, Frank Wickenhauser, and Marshall were present, and the question of the 5' strip was the primary topic. No further meetings were held until May 14, 1964, which meeting was called by Harry Marshall. While Marshall said he either had a deed in his hand, or laid it on his desk, it is apparent that the intention of the parties was that defendants Selhimes were ready to tender a deed, whenever plaintiff was ready to accept the property.

There is no question from the evidence that defendants Selhimes' attorney attempted to check into the 5' strip; that in the various descriptions used, more distance east and west was set forth than appeared in the description contained in the abstract; and that access had been used to the east by defendants and their customers, including the Storck Cleaners.

It is, therefore, concluded from the evidence that access to the rear of the property into Tibbetts Street was considered, and that the immediate area to the east of said property was considered a part of Tibbetts Street for the simple reason, defendant Virgil Selhime said he never knew the 5' strip was there;

419

that the parties were attempting to do something about the 5′ strip and, the time limit, in the contract for sale was not insisted upon, and neither party made a tender of performance within said 30-day period.

. . .

After the expiration of the 30-day time limit in the contract for sale, a meeting was held by all parties concerned, numerous phone calls were made, and this continued up and into July 1964. Defendants never did give plaintiff any notice orally or in writing of any termination, or forfeiture of the contract. The only thing that was done, appears conclusively by the testimony of Virgil Selhime, when he said at the meeting on May 14, 1964 to plaintiff:

> "That Marshall said we were ready to tender a deed if he was ready to accept the property."

It is the opinion of the court that each of the parties mutually negated the requirement of time being of the essence of the agreement, and by Defendants' Selhime failure to give any notice of forfeiture, or termination of the contract and a reasonable time within which to perform, no termination was ever effected.

It is true that on July 24, 1964, Harry Marshall, as attorney for defendants, Selhimes, did send a letter, but this was after he had prepared a contract to sell the property to defendants Lock, for the same monetary consideration, which agreement was dated July 15, 1964, (Defendants' Lock Exhibit 1) and a deed was signed on July 29, 1964.

This said letter of July 24, 1964 did not give any time for plaintiff to perform, and any tender of performance by plaintiff would have been a useless gesture.

420

■ We believe there was ample evidence to justify the trial court's finding that the time provision in the contract was waived and that therefore no termination of the contract could be effected by the Selhimes until they gave plaintiff a notice of forfeiture or termination of the contract and a reasonable time to perform. Christopher v. West, 409 Ill 131, 98 NE2d 722; Kingsley v. Roeder, 2 Ill2d 131, 117 NE2d 82.

■ Appellants rely upon the conversation of May 14, 1964, at the office of Harry Marshall, attorney for the Selhimes, to sustain their contention that plaintiff is precluded from specific performance because he refused tender of title to the property in question at that meeting. The trial court found that neither party treated the meeting of May 14, 1964, as an abandonment of the contract; that negotiations between the parties continued through May and June of 1964; that defendants' lawyer had continuously tried to get title to the five-foot strip in question or title insurance for the whole premises; that plaintiff was advised of these efforts and even offered to contribute part of the expense money.

We therefore find that there was an evidentiary basis for the finding of the trial court that neither party had abandoned the contract and that the trial court was correct in concluding that the Selhimes "did nothing about enforcing the contract until they had another buyer signed to a written instrument who was not interested in the 5′ strip, although he was informed about it by defendant, Virgil Selhime."

■ The determination of this case depends largely upon the facts to be found in the record. In such situations the findings and judgment of the trial court in chancery and nonjury cases will not be disturbed by the reviewing court if there is any evidence in the record to support such findings. Where a cause is heard by a chancellor without a jury, his conclusions on the facts are

421

entitled to the same weight as a jury verdict. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518.

For the foregoing reasons the judgment of the Circuit Court of Madison County is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.