**Edna Mae Development Co., Inc., Plaintiff-Appellant, v. Chicago Title and Trust Co., an Illinois Corporation, and Robert Stefaniak, Defendants-Appellees.**

Gen. No. 50,837.

First District, Second Division.

December 6, 1966.

Seymour J. Kurtz, of Chicago (Ben Copple, of counsel), for appellant.

Posanski, Johannsen, Krohn & Jacobs, of Chicago, for appellee, Robert Stefaniak.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from a judgment in favor of defendant in an action brought to restrain the payment of a real estate broker's commission in the amount of $5,500. The defendants are the Chicago Title and Trust Company, whose escrow department holds the funds pursuant to an escrow and Robert Stefaniak (hereinafter referred to as defendant), a broker, who plaintiff claims is not entitled to the funds because of his improper activity against his principal, the plaintiff.

On June 17, 1963, defendant entered into an exclusive brokerage contract with plaintiff, to sell a parcel of real

estate on which was located a motel and restaurant. Plaintiff was represented in said dealings by Emil and Neal Mermall, both officers. The agreement between plaintiff and defendant provided that a $170,000 asking price be established for the realty. After defendant was employed he placed an advertisement in the local newspapers and received many inquiries, all of which were communicated to either one or the other of the Mermalls.

On or about August 27, 1963, defendant received an inquiry from one Frank Zela, an old acquaintance, from whom he received a verbal offer of $75,000. This offer was communicated to the Mermalls and refused. On August 28, 1963, defendant reported that Zela would go up to $85,000. On August 30, 1963, a meeting was held between Zela and Emil Mermall. Mermall indicated he would accept an offer of $90,000 plus payment of delinquent water bills, delinquent taxes and the unpaid balance on an electric sign attached to a building on the premises. Zela indicated he was not sure he could raise that amount of money. Whereupon Emil Mermall said, "Well, don't you have any friends that hang around the gym, any of your friends who might be interested in investing?" Zela then turned to defendant and said, "Well, Bob, your dad has been hanging around for years, do you feel that he might be interested?"

On August 30, 1963, the date of the original conference with Zela, the purchaser, a further conversation was had at the office of defendant. Emil Mermall suggested to defendant that the commission ought to be reduced in that defendant's father was to become one of the purchasers and furthermore in that he was anxious to sell the property and therefore cut the price as low as he could. Defendant thereupon agreed to accept $5,500 as and for his commission and disbursements in full.

On September 3, 1963, at the office of defendant, in the presence of Frank Zela, Emil Mermall, Neal Mermall and

himself, Emil Mermall asked Zela, "Were you able to get some of your friends in?" and Zela said, "Yes, Orville Ragovan, possibly Bob Dahl, possibly a Mr. Murray and then possibly Casey (Stefaniak) would come in," to which Emil Mermall responded, "I am glad that a group of men could get together." A written contract was prepared and signed, providing for a total consideration of $90,000 plus the payment of the delinquent taxes, water bill and the unpaid balance on the sign, with the provision that said contract could be rescinded on or before September 6 in the event either financing or a liquor license could not be obtained.

On September 6, an escrow was set up at the Chicago Title and Trust Company, which provided for payments as stipulated in the contract. At that time, a further conversation took place between Emil Mermall and the prospective purchaser relative to the identity of the other investors. Some discussion then followed with reference to who was to be the grantee and it was suggested by attorney Thomas Bobak, representing the purchaser Zela, that a corporate entity should be created to take title as a matter of convenience, in view of the multiple investors. Defendant, pursuant to the suggestion of Emil Mermall, made inquiry of several savings and loan associations for the maximum possible loan to be secured by the property in question.

On September 19, 1963, a charter was issued to Active Associates, Inc. Defendant was a member of the Board of Directors of Active Associates, Inc. on September 26, 1963, when said firm applied for a liquor license with the State of Illinois.

On October 28, 1963, title to the realty was transferred from plaintiff to Active Associates, Inc. Plaintiff contends that stock in Active Associates, Inc., was owned by defendant on this date. Defendant contends that he did not receive any stock in Active Associates, Inc., until after November 15, 1963, at which time the stock was

transferred from Casey Stefaniak to defendant. Casey Stefaniak acquired the stock by investing $10,000 in the corporation. Casey Stefaniak explained the transfer of the stock to his sons, defendant and Thomas Stefaniak, on the ground that he was a city official of Calumet City and could not be an owner of any property used in the liquor business. Defendant was not an organizer of Active Associates, Inc.

On November 14, 1963, a recording machine was set up in the office of Emil Mermall and questions were put to defendant as to whether he personally was one of the purchasers, whether he bought any stock and whether he was an officer or director of the corporation. On November 15, 1963, the escrow at the Chicago Title and Trust Company was closed out except for the $5,500, the sum being contested in this action.

Plaintiff's theory of the case is that defendant is not entitled to his broker's commission because his activity was adverse to that of his principal.

It is defendant's theory of the case (1) that a broker for the sale of land is at liberty to deal with a purchaser for a joint interest in the property after the sale has been completed, and (2) that a broker is not barred from recovery of his commission if there is a proper disclosure of his interest.

■ ■ At the outset, the oral conversations between Mermall and defendant Stefaniak that were recorded on November 14, 1963, were properly excluded as evidence. Tape recordings of an oral conversation are not admissible into evidence against any party who does not consent to the recording of the conversation. People v. Kurth, 34 Ill2d 387, 216 NE2d 154 (1966) and People v. Wolfson, 79 Ill App2d 309.

■ We likewise find no merit in plaintiff's other arguments. The obligation of a broker for the sale of realty terminates at the time he procures a ready, willing and able purchaser. Short v. Millard, 68 Ill 292 (1873).

From that time on the broker is at liberty to deal with the purchaser for a joint interest in the realty. In any event, after the sale was completed, defendant was free to act adversely to his principal. Hardy v. Davis, 223 Md 229, 164 A2d 281 (1960). In the instant case, a contract was signed on September 3, 1963. The activity of the broker in acquiring an interest in the realty occurred subsequent to the day the contract was signed, in that the formation of the corporation, the subscription to stock and the issuance of stock to defendant occurred after the aforesaid contract date.

■ Plaintiff contends that issuance of shares in the corporation took place prior to the date title passed to Active Associates, Inc. and that this date is controlling as to whether or not defendant Stefaniak was acting adversely to the interest of plaintiff. We disagree with plaintiff. The controlling date was the date the contract was signed and not the date the title to the realty was passed. See Hardy v. Davis, supra.

Furthermore, there is evidence in the record that transfer of the stock to defendant in Active Associates, Inc. did not occur until November 15, 1963, which was subsequent to the acquisition of the title to the realty by said Active Associates, Inc.

■ Finally, we find evidence in the record that plaintiff knew, prior to the signing of the contract, that defendant's father would be one of the purchasers. Slemmons v. Dime Savings & Trust Co., 340 Ill 385, 172 NE 821 (1930). It is axiomatic in cases tried without a jury that it is within the province of the trial court to determine the credibility of the witnesses and the weight to be attached to their testimony and that the findings of fact, made by the trial judge, will not be disturbed by a reviewing court unless said findings are against the manifest weight of the evidence. Emil Mermall denied that he was ever told that Casey Stefaniak, the broker's father, was to be one of the purchasers. Zela, the initial

purchaser, testified, however, that the name of Casey Stefaniak was mentioned at the time of the first conference on August 30th and again on September 3rd, the date the contract was signed and that the name was mentioned again on the day the escrow was being set up at the Chicago Title and Trust Company. This later testimony was substantiated by defendant and Thomas Bobak, the attorney for Zela. The trial court heard this testimony and resolved it in favor of defendant. We will not disturb its findings. For the above reason the decision of the lower court is affirmed.

Judgment affirmed.

BRYANT, P. J. and BURKE, J., concur.