HENRY J. LAGESCHULTE, Plaintiff-Appellee, v. FRANCIS J. STEIN-BRECHER, Defendant-Appellant.

First District (2nd Division) No. 59781

Opinion filed March 12, 1976.

HAYES, J., specially concurring.

Evans, Hunberford, Poynton & Sullivan, of Chicago (William J. Harte, of counsel), for appellant.

DeFrees & Fiske, of Chicago (Edward J. Griffin and Gary S. Schuman, of counsel), for appellee.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

This is an appeal from a decree that ordered specific performance of a written contract to sell land. We are asked to review three issues. 1. Whether the plaintiff-purchaser was in default of the contract; and for this reason, was not entitled to specific performance. 2. Whether the plaintiff-purchaser failed to tender the earnest money required by the contract and thus was not entitled to specific performance. 3. Whether the plaintiff-purchaser's failure to disclose that he was in fact a co-operating broker, one who was sharing in the real estate commission that defendant was paying, met the equitable standards of conduct required of a plaintiff who applies to a court for equitable relief. These issues are before us on the following facts.

I.

On February 18, 1971, Henry J. Lageschulte entered into a written contract by which he agreed to purchase approximately 38 acres of land from Francis J. Steinbrecher for $100,000. Ten of the acres were in McHenry County, the rest in Lake County, Illinois. The contract, although personally signed by the parties, was not negotiated by them. Contract negotiations were conducted by Thomas Haywood, a lawyer who represented Lageschulte, and John T. Williams, a broker with Barrington Realty Company of Barrington, Illinois who represented Steinbrecher. Among its terms was one which required Lageschulte, within 30 days of the contract's execution, to obtain and deliver to Steinbrecher a survey certified by a registered Illinois land surveyor showing the exact boundaries, legal description, and acreage of the land being sold. In the event the survey showed that the parcel contained less than 38 acres, the purchase price was to be reduced proportionately. The parties also agreed that no later than 15 days after receipt of evidence of good title, Lageschulte was to apply for a zoning reclassification by the Village of Barrington Hills which would permit development of the land by construction of at least 20 single-family homes. With regard to payment of

the price, it was agreed that Lageschulte was to deposit $4,000 with Steinbrecher as earnest money.

Shortly after the contract was signed, Haywood, acting for Lageschulte, advised officials of the Village of Barrington Hills that his client had contracted to purchase the parcel in question; and that a land plan was in preparation, one he wanted to discuss with them informally. On March 19, 1971, Steinbrecher sent Lageschulte a title commitment report that covered the Lake County portion of the parcel. Lageschulte, on April 20, 1971, sent Steinbrecher a check for the expense incurred in obtaining the title report. Then, during the latter part of March 1971, the land plan for the parcel was completed by a private firm of land planners. It was reviewed and discussed with members of the Zoning Board of the Village of Barrington Hills. Thereafter, and until August of 1971, Lageschulte, either personally or through Haywood, continued discussions with officials of the municipality where the parcel was situated. The meetings were informal and resulted in a revision of the plan that had originally been submitted.

On September 28, 1971, Haywood sent Steinbrecher a letter in which was enclosed a petition to rezone the land with the request that he lend his name to it. Steinbrecher refused to do so. Instead, on the following day, he sent a notice saying to Lageschulte that his "failure and refusal to perform in accordance with the terms of our written agreement * * * has rendered said agreement of no force and effect." Despite this notice, Lageschulte on October 11, 1971, filed his formal rezoning application with the Village of Barrington Hills Zoning Board by a document that did not have Steinbrecher's signature. Then, on October 28, 1971, through Haywood, he sent Steinbrecher a plat of survey, the legal description of the subject real estate, and a copy of the rezoning petition. Six days later, Haywood called Steinbrecher to tell him that he could not "call off" the real estate deal. A short time later, on November 10, Haywood had another conversation with Steinbrecher from which he learned the name of the latter's attorney. On the same evening, Lageschulte and Haywood met informally with members of the Barrington Hills Zoning Board and Planning Commission. Thereafter, and through the month of December 1971, Haywood carried on conversations with Steinbrecher's attorney who said that his client had taken the position that the real estate contract with Lageschulte was no longer binding on him. Nevertheless, on January 17, 1972, Lageschulte, through Haywood, sent Steinbrecher a letter in which he waived certain provisions in the contract and stated that he had elected to proceed under its terms. In response to this communication, Steinbrecher, on February 3, 1972, sent

Lageschulte a letter in which he declared the February 18, 1971, contract null and void. Alternatively, Steinbrecher gave notice that with regard to three contractual requirements, Lageschulte was in default: (1) he had failed to deposit with Steinbrecher the $4,000 earnest money that was due on the day the contract was executed; (2) he had failed to deliver a certified survey showing the exact boundaries of the parcel, its legal description, and its acreage; and (3) he had failed to apply to the Village of Barrington Hills for rezoning within 15 days after receipt of evidence of title.

Fifteen days after he received this letter, Lageschulte filed suit for specific performance. The trial court later heard the evidence and entered a decree in which it found that Lageschulte had not defaulted on any term of his contract with Steinbrecher. As to the $4,000 earnest money deposit, the court found that this requirement had been modified by the parties with Steinbrecher's concurrence. No reference was made by the court to Steinbrecher's claim that Lageschulte was not entitled to relief because he was a cooperating broker who was sharing in the broker's commission Steinbrecher was paying. Instead it ordered specific performance of the contract, and Steinbrecher seeks review of the decree.

## II.

The first two issues Steinbrecher presents do no more than articulate his claims that Lageschulte had defaulted on certain terms of the contract between them. After reviewing the record, however, we find that in its decree, the trial court made detailed findings of fact regarding all of Steinbrecher's claims. Based on evidence it heard, the court determined that Lageschulte "* * * acted with diligence and good faith in a reasonable effort to perform the contract" and that Steinbrecher's "* * * contentions that plaintiff was in default and therefore is not entitled to specific performance are without merit." In addition, the court specifically found that Lageschulte's "* * * failure to pay earnest money was the result of an agreement between the parties that the earnest money would be retained by the plaintiff; that any default in furnishing a survey was cured when plaintiff furnished a survey to defendant on October 28, 1971, [one that was] certified by a registered land surveyor and stated the boundaries, legal description, and acreage of the property; and the court finds that [these acts by the plaintiff] met the requirements of the contract; and that the plaintiff had several informal contacts with the officials of Barrington Hills concerning zoning; and any default in applying for rezoning was cured by the filing of a petition on October 10, 1971."

■ In an appeal in which the controversy is whether there was

compliance with the terms of a contract, questions concerning performance are usually answered by facts shown in the record. In this case, the record contains the testimony of seven witnesses. Additionally, 28 exhibits were offered and received as part of the proof. From this evidence the trial court made its findings of fact. It is well established that a trial court's determinations of questions of fact will not be reversed unless those determinations are against the manifest weight of the evidence, or unless there is a clear and palpable error in some other respect. (*Brown v. Commercial National Bank*, 42 Ill. 2d 365, 247 N.E.2d 894, *cert. denied*, 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436; *Brown v. Zimmerman*, 18 Ill. 2d 94, 163 N.E.2d 518; *Lang v. Parks*, 19 Ill. 2d 223, 166 N.E.2d 10.) We are of the view that the factual determinations in this case are supported by the evidence, and no clear or palpable error in any other respect appears. Accordingly, we will not substitute our judgment for that of the trial court. (*Wickenhauser v. Selhime*, 75 Ill. App. 2d 413, 221 N.E.2d 6; see *Chirikos v. Akathiotis*, 9 Ill. App. 3d 191, 292 N.E.2d 120.) Therefore, we conclude that Lageschulte was not in default of his contract with Steinbrecher, nor had he failed to tender the earnest money required of him.

### III.

■■ We now turn to the question whether Lageschulte's failure to disclose that he was sharing in the real estate commission Steinbrecher was paying met the equitable standard of conduct required of a plaintiff who applies to a court for equitable relief. This issue arises from the fact that Lageschulte was the president and owner of Dunkirk Realty, a real estate firm which, as a cooperating broker, was going to share in the commission that Steinbrecher had agreed to pay Barrington Realty, the company that had represented him in the transaction. It clearly appears from the evidence that Steinbrecher's broker, John T. Williams of Barrington Realty, knew of Lageschulte's controlling interest in Dunkirk Realty; but he did not inform Steinbrecher of this fact. Consequently, Steinbrecher did not know of Lageschulte's connection with Dunkirk Realty.

It must be noticed, however, that there is no evidence which could prove existence of the relation of broker and principal between Lageschulte and Steinbrecher. (See *Fish v. Teninga*, 330 Ill. 160, 161 N.E. 515; compare *Dickerson Realtors, Inc. v. Frewert*, 16 Ill. App. 3d 1060, 307 N.E.2d 445; *Bennett v. H. K. Porter Co.*, 13 Ill. App. 3d 528, 301 N.E.2d 155.) On course, if such a relation were proved, its essential and basic features would have been those of agency; and the rules applicable to the relation of principal and agent would have governed the rights

and liabilities of the parties. *City of Chicago v. Barnett*, 404 Ill. 136, 88 N.E.2d 477.

But it is from the relation of principal and agent, a relation fiduciary in character, that the duty to disclose finds its genesis. (*Moehling v. W. E. O'Neil Construction Co.*, 20 Ill. 2d 255, 170 N.E.2d 100; *Lerk v. McCabe*, 349 Ill. 348, 182 N.E. 388; *Chicago Title & Trust Co. v. Schwartz*, 339 Ill. 184, 171 N.E. 169; *Pawlowic v. Pearce*, 59 Ill. App. 2d 153, 207 N.E.2d 155.) Absent such a relation, with the burden of proving its existence on the party that asserts it, there is no duty to disclose when parties deal at arms length with each other. See *Fish v. Teninga*, 330 Ill. 160, 161 N.E. 515; 12 Am. Jur. 2d *Brokers* § 83 *et seq.* (1964); 12 C. J. S. *Brokers* §§ 12, 15 (1938); 1 Ill. L.&Pr. Agency §§ 15—20 (1953).

From his brief, and through the oral argument on his behalf, it appears to be Steinbrecher's theory that Lageschulte, because he owned Dunkirk Realty, profited from the real estate commission that resulted from the transaction. Very little evidence is in the record to support this theory. In fact, aside from the mention of its name in the contract, the record is practically silent concerning Dunkirk Realty. It is stated in the agreement that the "purchaser warrants no broker other than Dunkirk Realty and Barrington Realty were instrumental in submitting, showing or selling the premises to him." Immediately following this declaration is the statement, "seller warrants that no other broker is entitled to receive commissions with respect to the sale." A line drawn through this statement, showing it was stricken, apparently, by Steinbrecher, on the day he signed the contract. Then there follows a sentence saying that "seller agrees to pay Barrington Realty the brokerage commission in the amount agreed to in the exclusive right to sell with Barrington Realty." There is no other reference to the commission, the brokers, or to Lageschulte's connection with Dunkirk Realty.

Therefore, this is not a case in which the evidence shows a broker or agent who, in a real estate transaction, acts in his own interest while ostensibly acting for the benefit of a principal. (Compare *Moehling v. W. E. O'Neil Construction Co.*, 20 Ill. 2d 255, 170 N.E.2d 100; *Chicago Title & Trust Co. v. Schwartz*, 339 Ill. 184, 171 N.E. 169.) Nor is it a case where a broker embarks in a dual agency, acting for both buyer and seller, without the seller's knowledge. (See *Mohnk v. Seyfarth*, 339 Ill. 371, 171 N.E. 510.) Consequently, this case is not controlled by the rule that a broker may not represent or accept compensation from both parties to a real estate transaction except with the knowledge and consent of each. (See Annot., 63 A.L.R.3d 1211 (1975); 12 C.J.S. *Brokers* § 72 (1938).) Rather, the case before us presents the ques-

tion whether the fact that a real estate purchaser is also the president and owner of a cooperating corporate broker, a fact undisclosed to the seller by his broker, disqualifies the purchaser from obtaining specific performance of his contract.

We have not found a case, nor have the parties directed our attention to one, in which this precise question has ever been decided. There are many, however, that touch on issues concerning the recovery of brokerage commissions. A majority of these hold that a seller's broker who gives the purchaser part of his commission in order to make the sale, does not breach his fiduciary duties; he goes beyond his duty in sacrificing part of his earnings to advance the interests of his principal. (See *Snyder v. State-Wide Properties, Inc.* (7th Cir. 1962), 311 F.2d 33, 36; Annot., 63 A.L.R.3d 1211, 1238-39 (1975).) Guided by these cases, we uphold the trial court's conclusion that sharing in the real estate commission by Dunkirk Realty, the company controlled by the purchaser, was not ground to deny specific performance of the contract between Lageschulte and Steinbrecher. (See *Louisville, New Albany & Chicago Ry. Co. v. Diamond State Iron Co.*, 126 Ill. 294, 18 N.E. 735.) It is obvious that Steinbrecher was not prejudiced when he was not told by his broker of Lageschulte's relation with Dunkirk Realty. He will be paid the precise price he asked for the parcel of land; and he does not dispute the fact that the contracted sum is its fair cash value as set by himself at the time. (See *Glover v. Layton*, 145 Ill. 92, 34 N.E. 53; compare *Dickerson Realtors, Inc. v. Frewert*, 16 Ill. App. 3d 1060, 307 N.E.2d 445.) Therefore, the decree granting specific performance is affirmed.

Affirmed.[1]

DOWNING, J., concurs.

Mr. JUSTICE HAYES, specially concurring.

I concur in all respects with the opinion of the court. I file this concurring opinion merely to develop a bit further the matter of the alleged duty owed to the seller by Dunkirk Realty as the cooperating broker to disclose to the seller the relationship between the buyer and itself (namely, that the buyer was the president and owner of Dunkirk Realty, which, as the cooperating broker, would, by reason of an agreement

---

[1] This opinion is published to give the reasons for our judgment of affirmance entered Thursday, February 26, 1976. In our order of that day, we provided that in the event a petition for rehearing is filed, the time required by Supreme Court Rule 367(a) will be computed from March 12, 1976. In the event no petition for rehearing is filed in this court, the time of petition for leave to appeal as provided by Supreme Court Rule 315(b) will be 56 days from March 12, 1976.

between Dunkirk and Barrington Realty, share in the commission to be paid by the seller to Barrington Realty as the listing broker).

It is true that a real estate broker with whom a seller lists his property for sale creates, by his acceptance of the listing, a principal-agent relationship with the seller whereby the broker-agent becomes a fiduciary to the seller-principal. By reason of this fiduciary relationship, the listing broker has the duty to disclose to the seller the identity of the buyer (Annot., 2 A.L.R.3d 1119, 1128 (1965)), as well as any significant relationship between the buyer and the listing broker. (*Edna Mae Development Co. v. Chicago Title & Trust Co.* (1966), 79 Ill. App. 2d 251, 223 N.E.2d 285 (the buyer was the father of the listing broker).) Moreover, it is improper for the listing broker to acquire, directly or indirectly, any interest in the listed property without the knowledge and consent of the seller-principal. *Olson v. Eulette* (1947), 332 Ill. App. 178, 74 N.E.2d 609.

We are aware that a real estate broker who cooperates with the listing broker in the sale of the listed property is bound by the terms of the listing agreement between the listing broker and the seller (*Van C. Argiris Co. v. Caine Steel Co.* (1974), 20 Ill. App. 3d 315, 314 N.E.2d 361), and that a fiduciary relationship may or may not exist between the listing broker and a cooperating broker, depending upon the nature of the agreement between them. (See *Wyman v. Snyder* (1884), 112 Ill. 99.) But we have not been cited to any Illinois case, nor have I been able to find an Illinois case, in which a cooperating broker has been held to be, *in respect of the seller*, a sub-agent or co-agent of the listing broker so as to create, as between the seller and the cooperating broker, a relationship of principal-agent and thereby to make the cooperating broker a fiduciary to the seller. In my opinion, there is nothing in the function of a cooperating broker as such which warrants the implication of any direct relationship between the co-operating broker and the seller, and there is no implied authority from the seller to the listing broker to create any relationship of principal-agent between the seller and any cooperating broker; in fact, I see no reason why the cooperating broker may not be the agent of the buyer.

In the instant case, the listing broker was Barrington Realty; the cooperating broker was Dunkirk Realty, of which entity plaintiff-buyer was the president and owner. Under the circumstances, it seems clear to me that the cooperating broker was the agent of the buyer. As the opinion of the court points out, we find no evidence of any principal-agent relationship between the cooperating broker and the seller and, in the absence of such evidence, we cannot find any fiduciary duty owed by the cooperating broker to the seller to disclose the relationship between

the cooperating broker and the buyer. On the contrary, as the opinion of the court also points out, there is some evidence in the instant real estate purchase contract between the seller and the buyer that the seller wished to sustain no relationship whatever with any broker other than the listing broker. A buyer's warranty in that contract disclosed to the seller the participation of Dunkirk Realty. With that knowledge, the seller cancelled out the following printed sentence in the contract: "Seller warrants no other broker is entitled to commission.".

Finally, we have noted that the seller sustained no pecuniary damage of any kind, because he received the full price for which he had listed the property for sale, and he paid simply the commission specified in the terms of his listing agreement with Barrington Realty.

I conclude that there was no evidence of any fiduciary relationship between Dunkirk Realty and the seller, and no duty owed to the seller by either the buyer or Dunkirk Realty to disclose to the seller the relationship between themselves.